**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 23-cv-02381-REB-STV

MARK BURNETT,

     Plaintiff,

v.

FINANCE OF AMERICA MORTGAGE, LLC, and
GRAHAM FLEMING

     Defendant.

## ORDER RE:  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Defendants' Motion for Summary Judgment** [#40],[1]

filed October 31, 2024.  I grant the motion in part and deny it in part.

### I.  JURISDICTION

I have jurisdiction over this matter under both 28 U.S.C. § 1332 (diversity of

citizenship).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.**

56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d

265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either

---

[1] "[#40]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

Plaintiff Mark Burnett was employed by defendant Finance of America Mortgage, LLC ("FOAM"), a forward mortgage lending company, from 2010 until December 15, 2022. From 2017 until the time his employment with FOAM ended, Mr. Burnett was a branch manager for the company. His branch covered two "cost centers" comprised of three Colorado offices in the Denver Tech Center/Englewood, Colorado Springs, and Pueblo.

During the period of time relevant to this lawsuit, Mr. Burnett's compensation was paid according to the terms of a Branch Manager Non-Producing Compensation Agreement.[2] (**Motion App.**, Exh. 4.) In addition to specifying the terms of Mr. Burnett's base compensation, the agreement set forth the conditions under which Mr. Burnett would be entitled to various types of variable compensation, including relevantly for purposes of this lawsuit, bonuses:

> Discretionary Bonus. The Company may, from time to time, award Employee with a Discretionary Bonus based on Employee's overall contributions to the Company, or for greatly exceeding expectations regarding productivity. Discretionary Bonuses may be awarded for the following preapproved reasons: 1) exceeding volume expectations, 2) retention, 3) incentives to join the Company ("Sign-On Bonus"), and 4) assisting with a corporate initiative. These bonuses, if any, are awarded at the sole discretion of the Company, and in amounts set at the sole discretion of [FOAM].

(*Id.*, Exh. 4 ¶ 5.2 at 3.)

In September 2022, FOAM began discussions with Guaranteed Rate regarding the sale of FOAM's assets to Guaranteed Rate, and on September 15, the parties executed a non-binding term sheet. (*Id.*, Exh. 1 at 11, 22.) The following day, Mr. Burnett requested a discretionary bonus of $875,000. (**See id.**, Exh. 6.)[3] The requested bonus was more than three times Mr. Burnett's annual base salary of $250,000 (*id.*, Exh. 4A) and significantly larger than any bonus he requested in the

---

[2] A "non-producing branch manager" is one who does not originate mortgage loans and thus does not earn commissions. (**Motion App.**, Exh. 2 at 19.)

[3] Although FOAM maintains Mr. Burnett's bonus request was motivated by rumors of the sale (*see* Motion ¶ 23 at 7), he denied as much in his deposition, stating only that rumors of a sale had circulated on and off for years (*see* Motion App., Exh. 2 at 47).

past (*id.*, Exh. 2 at 61).[4]  Nevertheless, Mr. Burnett believed he was entitled to this bonus based on the status of his general ledger, the success and profitability of his branches over the years, and his substantial contributions to the success of FOAM, including taking on business, recruiting, and training for other branches.  (*See id.*, Exh. 2 at 61-63; **Resp. App.**, Exh. 15 ¶ 8 at 2, Exh. 17 ¶¶ 4-5 at 1-2.)

Apparently, Mr. Burnett's supervisors agreed with his assessment, as his bonus request was marked approved that same day by his direct supervisor, Craig Davis, and two days later by Michael Farr, FOAM's president of retail lending and national regional sales director.[5]  (*See* **Motion App.**, Exh. 6; **Resp. App**., Exh. 15 ¶¶ 3 & 6 at 1.)  The parties dispute whether Mr. Burnett's request was approved once Mr. Davis and Mr. Farr executed their approvals.  FOAM insists bonus requests were subject to review by FOAM's corporate leadership prior to final approval, relying on the deposition testimony of their Rule 30(b)(6) corporate representative, Michael Lord, FOAM's Chief Financial Officer.  (**Motion App.**, Exh. 3 at 83-85.)[6]  By contrast, Mr. Davis, on behalf of Mr.

---

[4]  Contrary to FOAM's suggestion (*see* **Reply Br.** at 9), the size of the bonus actually lends support to Mr. Burnett's arguments that it constituted "wages" within the meaning of the Colorado Wage Claim Act.  *See Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. App. 1988).  *Cf. Long v. OmniTRAX, Inc.*, 2014 Colo. Dist. LEXIS 3576 at *10 (Colo. Dist. Ct., Denver Cty., March 17, 2014) (drawing negative inference from fact that bonus was not "disproportionately large" in relation to employee's base salary, citing *Rohr*).

[5]  These were Mr. Farr's titles as understood by Mr. Davis, as set forth in his declaration.  By contrast, FOAM has attested that Mr. Farr was "President and Senior Vice President" of FOAM.  (**Resp. App.**, Exh. 21 ¶ 10 at 7.)

[6]  In FOAM's description of these steps, the words "process" (**Motion** ¶ 12 at 5) and "detailed plan" (*see* **Reply** ¶ 52 at 3) are doing a lot of work, at least to the extent they are based on Mr. Lord's testimony, which was tentative on this question, at best.  (*See* **Motion App.**, Exh. 3 at 84 ("If it would have gotten denied by -- for some reason there would have been a communication back to whoever submitted it, but in most cases I'm sure it would have came from the compensation team[.]"); *id.*, Exh. 3 at 84-85 ("[B]ecause if it was denied, somebody would have had to give the information back to the branch manager letting him know he's not getting paid.  So it would have been, you know, communicated

Burnett, counters that he "understood that Mr. Farr was authorized to sign the form, and that his signature on the form represented FOAM's agreement to pay Mr. Burnett the $875,000 bonus he had requested" and that he told Mr. Burnett his bonus had been approved. (**Resp. App.**, Exh. 15 ¶ 7 at 1, ¶ 11 at 2.) There is also evidence in the record before me suggesting FOAM never had failed previously to pay a bonus which had received the required two approvals. (*See id.*, Exh. 15 ¶ 12 at 3.) Moreover, Mr. Burnett avers he saw his bonus reflected on FOAM's CompenSafe system on September 27, 2022. (*Id.*, Exh. 17 ¶ 11 at 5.) The following day, however, it was gone. (*Id.*; *see also* **Motion App.**, Exh. 8.)

According to the declaration of FOAM's former Chief Operating Officer on behalf of Mr. Burnett, prior to September 2022, "FOAM customarily approved discretionary bonus requests by nonproducing branch managers up to an amount equal to the amount in the branch manager's general ledger, less two months of reserves for branch expenses." (**Resp. App.**, Exh. 16 ¶ 6 at 1.) Mr. Burnett asserts that at the time he requested his bonus, his Englewood branch held sufficient funds to pay his requested bonus and leave enough in reserve to cover fixed costs for almost a year. (*Id.*, Exh. 17 ¶¶ 7-8 at 2-3, Exh. 18 at 35-36.) However, during the period of the contemplated sale to Guaranteed Rate, defendant Graham Fleming, FOAM's Chief Administrative Officer, and Mr. Lord adapted the formula to include, in addition to two months' operating expenses, deductions for an amount for severance and an amount to cover remaining

---

somehow from that way and then at that point, you know, if the branch manager got a denial, I'm sure the first phone call they were going to make was to Mr. Davis or Mr. Farr if that's who they reported to.").)

5

lease obligations.  In late September or early October 2022, the reserve requirement was increased again, to six months' operating expenses, severance, and remaining lease obligations, with the expectation that it would take that much time to service the remaining loans in FOAM's pipeline after it stopped originating new loans.  (**Motion App.**, Exh. 1 at 24-25, Exh. 3 at 31-32, 40, 86, 88-89.)

Ultimately, however, the Guaranteed Rate acquisition did not go through, which FOAM perceived as making the need to ensure adequate reserves even more crucial, as there was no longer the opportunity to transfer those obligations to a buyer.  (*Id.*, Exh. 1 ¶ 8 at 2.)  Soon thereafter, FOAM decided to exit the forward mortgage lending industry and cease operations entirely.  Mr. Fleming announced that decision to FOAM employees on October 21, 2022.  (*Id.*, Exh. 1 ¶ 8 at 1 & Exh. 5.)

Meanwhile, after discovering his bonus was no longer reflected on the company's compensation ledgers, Mr. Burnett emailed Jason Kashuba, the sales compensation manager, carbon copy to Mr. Davis, to inquire on the status of his bonus. Mr. Davis responded, assuring Mr. Burnett that "as a non producing mgr you will be fine" and "nothing has come up to the contrary about compliant bonuses."  (*Id.*, Exh. 8.) On October 7, after Mr. Burnett again inquired about the status of his bonus, Mr. Kashuba responded that the request was being reviewed.  (*Id.*, Exh. 9.)  Ultimately, FOAM denied Mr. Burnett's request for a bonus on the basis that fulfilling it would have left his branch's general ledger with a negative balance and no reserves to cover expenses.  (*See id.*, Exh. 1 ¶¶ 9-20 & Exh. A, Exh. 10.)  However, Mr. Burnett insists the calculation of his branches' reserves was skewed because FOAM included all 63

6

months of rent remaining on the recently-renewed lease of the Englewood office[7] without considering that the lease gave FOAM the opportunity to terminate early in November 2025.  (**Resp. App.**, Exh. 17 ¶ 19 at 5-6; Exh. 19 at 52-55, 63-65; Exh. 23 ¶ 11 at 4-5.)

Mr. Burnett continued to work for FOAM through mid-December 2022, assisting with the winding down of his branches' affairs.  He states he did so in anticipation of receiving his bonus, allegedly foregoing the opportunity to begin searching for a new position earlier.  (*Id.*, Exh. 19 ¶ 18 at 5.)  His employment terminated December 15, 2022.  On March 3, 2023, he inquired of FOAM's associate general counsel as to the status of his bonus (**Motion App.**, Exh. 12), but there is no evidence that anyone at FOAM ever responded to this inquiry.  This lawsuit followed.

By this lawsuit, Mr. Burnett contends the failure to pay his bonus violates the Colorado Wage Claim Act ("CWCA"), §§8-4-101 – 8-4-125, C.R.S.  He also alleges claims for breach of contract and unjust enrichment.  FOAM and Mr. Fleming have moved for summary judgment on all these claims.  Initially, Mr. Burnett concedes

---

[7] FOAM attaches to its reply brief an exhibit purporting to show Mr. Burnett approved the lease renewal in May 2022.  (**Reply App.**, Exh. 27.)  The exhibit does not prove any such thing, as Mr. Burnett simply told the leasing agent to "get [the lease] finalized," and the agent responded with a "clean copy" and asked Mr. Burnett to contact him with "questions . . . and/or to discuss."  (*Id.*)  The lease was not signed until August 5, 2022, by Mr. Reich; Mr. Burnett avers he had no authority to sign the lease.  (*See* **Motion App.**, Exh. 16 ¶ 9 at 2, Exh. 17 ¶¶ 14-15 at 4.)

Moreover, nothing in this putative factual dispute is relevant to the court's resolution of the issues raised by and inherent to the motion for summary judgment.  Accordingly, the court finds no need to consider Mr. Burnett's putative objection to its consideration (*see* **Plf. Partial Obj.** [#48], filed December 26, 2024), which essentially constitutes an unauthorized sur-reply in any event.  *See Green v. New Mexico*, 420 F.3d 1189, 1197 (10th Cir. 2005) (court did not abuse its discretion in denying leave to file a sur-reply where it did not rely on new materials appended to movant's reply brief); *see also Herlik v. Knight*, 2008 WL 185521 at *4 & n.1 (D. Colo. Jan. 18, 2008) ("There is no provision for filing a document captioned as a 'surreply[,]' [a] term without basis or meaning in the Fed.R.Civ.P.").

defendants' argument that Mr. Fleming cannot be individually liable for damages for breach of contract or unjust enrichment under Colorado law.  **See Newport Steel Corp. v. Thompson**, 757 F. Supp. 1152, 1156 (D. Colo. 1990).[8]  Thus, the motion will be granted as to these claims, and they will be dismissed with prejudice.

The essence of FOAM's arguments as to all Mr. Burnett's remaining claims is that they are untenable because FOAM retained absolute and unbounded discretion to grant or deny such a bonus.  I am unconvinced as a matter of law, and find further that there are genuine disputes of material fact as to whether FOAM abused its discretion in denying Mr. Burnett a bonus.

I begin with Mr. Burnett's CWCA claim.  The CWCA was enacted to ensure that "employers make timely payment of wages and to provide adequate judicial relief when employers fail to pay wages when due."  **Cagle v. Mathers Family Trust**, 295 P.3d 460, 469 (Colo. 2013) (citation, internal quotation marks, and ellipses omitted).  **See also Brownlee v. Lithia Motors, Inc.**, 49 F.Supp.3d 875, 878 (D. Colo. 2014).  When an employee is terminated (**see Complaint** ¶ 5 at 2), his "wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately."  §8-4-109(1)(a), C.R.S.  "Wages" includes "[b]onuses

---

[8]  By contrast, under the CWCA, the term "[e]mployer has the same meaning as set forth in the federal 'Fair Labor Standards Act of 1938' 29 U.S.C. sec. 203(d)," §8-4-101(6), C.R.S., pursuant to which an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"  Under that definition, "personal liability has often been imposed on individual officers in a corporation without conducting a traditional veil-piercing analysis."  **Lopez v. Next Generation Construction & Environmental, LLC**, 2016 WL 6600243 at *3 (D. Colo. Nov. 8, 2016).  (The statute was amended in 2019 to close the "loophole" created by the Colorado Supreme Court's decision in **Leonard v. McMorris**, 63 P.3d 323 (Colo. 2003), which held an individual corporate officer was not a "person" within the prior meaning of the CWCA, **id.** at 330.  **See** 2019 COLO. LEGIS. SERV., Ch. 182, (H.B. 19- 1267), §§ 1(b) &(c).)

8

or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." §8-4-101(14)(a)(II), C.R.S.

As evident from this definition, the CWCA does not create any substantive rights to any particular form of compensation. Rather it "establishes minimal requirements concerning when and how *agreed* compensation must be paid." **Kouzmanoff v. Unum Life Insurance Co. of America**, 374 F.Supp.3d 1076, 1088 (D. Colo. 2019) (citation and internal quotation marks omitted; emphasis in original).[9] Thus, to recover a bonus, Mr. Burnett must show he has "an enforceable right to receive payment for such benefits pursuant to an employment agreement." **Johnson v. Greenfield Holdings, LLC**, 2023 WL 3437372 at *3 (D. Colo. May 12, 2023) (citation and internal quotation marks omitted). **See also** §8-4-109(2), C.R.S. ("Nothing in [§8-4-109(1), C.R.S.] shall . . . require the payment at the time employment is severed of compensation not yet fully earned under the compensation agreement between the employee and employer, whether written or oral.").

Courts in this district routinely have considered the CWCA's requirements that "wages" be "earned, vested, and determinable" to apply to consideration of the availability of bonuses. **See, e.g.**, **Johnson**, 2023 WL 3437372 at *4; **Graesser v. IQVIA RDS Inc.**, 2022 WL 4547565 at *2 (D. Colo. Sept. 28, 2022). However, in **Nieto v. Clark's Market, Inc.**, 488 P.3d 1140 (Colo. 2021), the Colorado Supreme Court, considering a former employee's claim for vacation pay, remarked that the apposite

---

[9] In so providing, the legislature sought to avoid "employees relying on indefinite, possible remittances." **Kouzmanoff**, 374 F.Supp.3d at 1088.

subsection of the CWCA provided only that vacation pay must be "earned" and "determinable;" it did not require that such pay also be "vested."  **See** §8-4-101(14)(a)(III), C.R.S.  Because principles of statutory construction require that a specific provision trump a more general one to the extent they conflict, **see id.** at 1145 (citing **Mook v. Board of County Commissioners of Summit County**, 457 P.3d 568, 582 (Colo. 2020)), the Court concluded that a plaintiff seeking vacation pay under the CWCA need only prove that such benefits were earned, **id.** at 1145-46.[10]

Mr. Burnett points out that the subsection of the CWCA concerning the payment of bonuses likewise requires only that the bonus be "earned," absolving him of any burden to prove his bonus was "vested."[11]  Given the holding in **Nieto**, this conclusion seems inescapable.  I thus concur that the clear import of **Nieto** is to obviate any need for Mr. Burnett to prove that his bonus was vested.[12]

The **Nieto** Court held that a benefit is "earned" when it is owed "as return for . . . work done or services rendered" by an employee.  **Nieto**, 488 P.3d at 1144.  **See also**

---

[10] In addition, the **Nieto** Court mused that in the context of the CWCA's vacation pay provisions, "it is quite possible that 'vested' is essentially a synonym of 'earned.'" **Nieto**, 488 P.3d at 1145. Nevertheless, the court held that "even if vested means something other than earned, its exclusion from subsection (14)(a)(III) signals that the legislature did not intend it to apply in this context." **Id.** at 1146.

[11] In addition, because unlike the provision governing vacation pay considered in **Nieto**, §8-4-101(14)(a)(III), C.R.S., the subsection providing for bonus does not appear to include even a requirement that the bonus be "determinable," **see** §8-4-101(14)(a)(II), C.R.S., Mr. Burnett argues that, under the logic of **Nieto**, he need not prove that element either.  I am not entirely prepared to go that far, at least on the briefing before me.  In any event, assuming *arguendo* Mr. Burnett must show his bonus was determinable, that he requested and arguably received approval for a bonus of $875,000 certainly would satisfy that requirement.  **See Nieto**, 488 P.3d at 1144.

[12] Indeed, FOAM treats the terms "earned" and "vested" as interchangeable in its motion.  (**See Motion** at 11 ("A bonus is 'earned' and 'vested' when an employee performs the work required to receive the bonus according to the agreement between the employer and employee.").)

*Johnson*, 2023 WL 3437372 at *4 (bonus is "earned" when it is "receive[d] as return for effort and especially for work done or services rendered") (citation and internal quotation marks omitted).  The terms of the contract provide that bonuses could be earned based on an employee's "overall contributions to the Company, or for greatly exceeding expectations regarding productivity."  (**Motion App.**, Exh. 4 ¶ 5.2 at 3.) Clearly, such language contemplates the availability of bonuses for "services rendered" to the company above and beyond those compensated by an employee's base salary. At least two supervisors apparently believed Mr. Burnett had rendered such services. There thus is at least a genuine dispute of material fact as to whether Mr. Burnett had "earned" a bonus.

FOAM maintains the removal of this requirement is irrelevant here because the bonuses contemplated by the compensation agreement between the parties were wholly discretionary.  I am not persuaded.  FOAM's reliance on the Denver County district court decision in **Long v. OmniTRAX, Inc**., 2014 Colo. Dist. LEXIS 3576 (Colo. Dist. Ct., Denver Cty., March 17, 2014), is misplaced.  The decision there plainly rested on a determination that the employer's retention of discretion to award bonuses prevented the employee's bonus from being vested.  **See id.** at *4 (noting employer's argument that employee's bonus had not vested), *7 ("[A]n employer is liable when it refuses to pay *vested* bonuses . . . or otherwise refuses to recognize the employee's *vested* rights."), *10-11 ("Where . . . the employer retains absolute discretion to grant or withhold the bonus, the employee does not have a *vested* right to the bonus[.]") (emphases added).  In light of the Colorado Supreme Court's decision in **Nieto**, I

cannot find *Long* persuasive.[13]  **See *Panczner v. Fraser***, 374 F.Supp.3d 1063, 1068 (D. Colo. 2019) (while decision of a lower state court is not binding on federal court sitting in diversity, "it should usually be followed 'unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (quoting ***West v. AT & T Co.***, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

FOAM's only other authority, an appeal of a decision of the Colorado Division of Labor Standards and Statistics, does not clearly support its position either.  **See *United States Beef Corp. d/b/a Arby's***, Decision No. 19-060 (July 31, 2019)[14] (**Motion App.**, Exh. 14.)  Instead, the hearing officer in that case found the Division did not clearly err where the employee's evidence of oral promises to pay a bonus constituted uncorroborated hearsay insufficient to overcome the description of the written contract of the program as discretionary.  *Id.* at 5-6.[15]  That determination plainly suggests the possibility that evidence could have been presented which would have supported a contrary conclusion.

Both the law and the facts support the existence of such a possibility in this case.  While Mr. Burnett's compensation agreement refers to the bonus as

---

[13] Moreover, the evidence in *Long* showed only that the employee had been "recommended" for a bonus.  *Long*, 2014 Colo. Dist. LEXIS 3576 at *8.  By contrast, Mr. Burnett has presented sufficient evidence to create a triable issue of fact as to whether his bonus had been approved.

[14] Available at:  https://drive.google.com/file/d/1i1ic6UO27mrmpYKojzbCzxnpeNIWictb/view (last accessed: February 23, 2025).

[15] In addition, the hearing officer noted the employee had "some credibility issues."  **U.S. Beef** at 6.

discretionary, discretion can be abused.  Indeed, every contract in Colorado includes an implied duty of good faith and fair dealing, *see* §4-1-203, C.R.S., which attaches when the contract gives one party discretion in the performance of the terms of the contract, *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006).  "Good faith performance of a contract involves . . . consistency with the justified expectations of the other party." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16, 1996) (citation and internal quotation marks omitted).

On the record before me, there are genuine disputes of material fact as to whether Mr. Burnett had a reasonable, justifiable expectation that he had been awarded a bonus.[16]  He sought a bonus based on his "overall contributions to the Company, or for greatly exceeding expectations regarding productivity."  (**Motion App.**, Exh. 4 ¶ 5.2 at 3.)[17]  His request had been approved by both his direct supervisor, Mr. Davis, and a president of the company, Mr. Farr.  The evidence suggests no previous bonus request had ever been denied where it had received such approvals, and Mr. Davis informed Mr. Burnett his bonus had been approved.  Indeed, Mr. Burnett avers he saw the bonus reflected in the company's online compensation program in late September.

---

[16] The court's recitation of these fact issues is illustrative and not necessarily exhaustive and should not be taken in any wise to cabin the universe of evidence that may be presented at trial.

[17] FOAM's argument that Mr. Burnett had not met any of the additional "pre-approved" reasons justifying a bonus is irrelevant and disingenuous given this broader language of the contract.

There are also disputes of material fact as to whether FOAM abused its discretion by denying Mr. Burnett's bonus once it ostensibly was approved.  For example, Mr. Burnett testified his general ledger at the time he requested the bonus reflected funds on hand more than adequate to pay the bonus and maintain reserves for fixed expenses for almost another year.  Moreover, a jury could find FOAM's explanation for why it ultimately could not approve Mr. Burnett's bonus – because doing so would have left Mr. Burnett's branches with negative reserves – undercut by evidence that the formula it used unfairly saddled the Englewood branch with rent payments that could have been avoided.

Moreover, FOAM's arguments as to the allegedly unbridled scope of its discretion are clearly contrary to the policy considerations which animate the CWCA.  The purpose of the CWCA is "to protect employees from exploitation, fraud[,] and oppression," and thus the statute must "be liberally construed to carry out its [remedial] purpose."  **Nieto**, 488 P.3d at 1146-47.  **See also** §8-4-121, C.R.S. ("[A]ny agreement . . . by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void.")  Numerous courts have interpreted this provision as preventing an employer from interpreting or applying a contract term which would divest an employee of earned wages, including bonuses.  **See, e.g.**, **Goodwin v. Johnson Controls, Inc**., 2024 WL 5356881 at *6-7 (D. Colo. Dec. 27, 2024); **Johnson**, 2023 WL 3437372 at *5; **Hallmon v. Advance Auto Parts, Inc**., 921 F.Supp.2d 1110, 1120 (D. Colo. 2013).  **See also Nieto**, 488 P.3d at 1146-49 (contract provision purporting to divest employees of earned vacation pay unenforceable).  The

evidence before me is more than sufficient for a jury to find that FOAM actually had approved Mr. Burnett's bonus request and then rescinded its approval under the guise of a supposed additional step in the approval process. For these reasons, I find and conclude that the motion for summary judgment as to Mr. Burnett's CWCA claim must be denied.

As for Mr. Burnett's claims for breach of contract and unjust enrichment, FOAM again relies heavily on its discretion to deny bonuses. For many of the same reasons outlined above, it is evident there exist one or more genuine disputes of material fact which would make summary resolution of these claims inappropriate.[18] The motion as to these claims therefore also will be denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion for Summary Judgment** [#40] filed October 31, 2024, is granted in part and denied in part, as follows:

   a. That the motion is granted as to the claims for breach of contract and unjust enrichment against Graham Fleming individually; and

   b. That in all other respects the motion is denied; and

---

[18] The argument that Mr. Burnett did not have an enforceable contract because FOAM retained discretion with respect to the availability of bonuses ignores the evidence suggesting Mr. Burnett already had been "awarded" a bonus – as contemplated by the language of the contract – once both his direct supervisors approved his request. There also is sufficient evidence to create triable issues of fact as to whether Mr. Burnett performed under the contract.

As for Mr. Burnett's claim for unjust enrichment, "whether the defendant's retention of the benefit would be unjust [] calls for a fact-intensive inquiry in which courts look to, among other things, the intentions, expectations, and behavior of the parties." ***Menocal v. GEO Group, Inc.***, 882 F.3d 905, 923 (10th Cir. 2018) (citation and internal quotation marks omitted). There is evidence in the record from which a jury could conclude that FOAM's *post hoc* alteration of the reserves requirements and/or its failure to tell Mr. Burnett his bonus had been denied while continuing to make use of his services in winding down the business through mid-December 2022 were unjust.

2.  At the time judgment enters, judgment with prejudice shall enter on behalf of defendant Graham Fleming, individually, and against plaintiff Mark Burnett, as to Mr. Burnett's claims for breach of contract and unjust enrichment.

Dated February 24, 2025, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge